JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction for burglary, a second degree felony. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In June 2002, Alexi Shauger and Heather Werner lived together in a secured apartment building located in Parma, Ohio. At the time, defendant lived at the same complex, but in a different building. Shauger and Werner knew defendant because they were all co-workers at a local restaurant. Once romantically involved, Werner and Shauger, at the time of the events in this case, were simply roommates.
 {¶ 3} On June 22, 2002, Werner was home alone when defendant pushed his way into her apartment. According to Werner, a petite woman, defendant forced himself on her by kissing her, digitally penetrated her vagina and then pulled her to the floor and simulated having sex while on top of her. Defendant fell asleep for a short time and then left the apartment. When Shauger returned to the apartment around midnight, Werner told her what had happened and Shauger called police.
 {¶ 4} Defendant was indicted on six criminal offenses. Count one of the indictment charged defendant with rape in violation of R.C. 2907.02. Count two charged kidnapping, a violation of R.C. 2905.01. The third count of the indictment was for gross sexual imposition in violation of R.C. 2907.05. Count four was for burglary, R.C. 2911.12. Counts five and six charged defendant with disrupting public service in violation of R.C. 2909.04.[1] Defendant pled not guilty to all charges.
 {¶ 5} Defendant's jury trial commenced on March 20, 2003. Defendant did not testify. On March 24, 2003, the jury acquitted defendant of all charges except the burglary charge. Defendant filed a motion to dismiss or, in the alternative, a motion for new trial. Following a hearing, the trial court denied the motion and sentenced defendant to a two-year term of incarceration.
 {¶ 6} In this timely appeal, defendant presents three assignments of error. Because the first two assignments of error are related, they are addressed together.
{¶ 7} The verdict finding appellant guilty of burglary is against themanifest weight of the evidence.
 {¶ 8} The trial court erred and abused its discretion when itdenied appellant's motion to dismiss or, in the alternative, fora new trial.
 {¶ 9} Defendant argues his conviction for burglary is against the manifest weight of the evidence. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380,387, citingTibbs v. Florida (1982) 457 U.W. 31, at 42.
{¶ 10} "The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction."
 {¶ 11} State v. Martin (1983), 20 Ohio App.3d 172, 175; State v.Issa, 93 Ohio St.3d 49.
 {¶ 12} The decision to grant or deny a motion for new trial is within the discretion of the trial court and that decision shall not be disturbed upon appeal absent a clear showing of abuse of that discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. "An `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude in unreasonable arbitrary or unconscionable * * *." State v. Moreland (1990), 50 Ohio St.3d 58,61, 552 N.E.2d 894. "The decision to grant a motion for new trial is an extraordinary measure which should be used only when the evidence presented weights heavily against the conviction." State v. Samatar,152 Ohio App.3d 311, 2003-Ohio-1639, 7878 N.E.2d 691, at ¶ 35.
 {¶ 13} Defendant argues that because the jury acquitted him of rape, gross sexual imposition, and kidnapping, it could not then convict him on the burglary charge. He concludes that either the inconsistent verdicts constitute an "irregularity in the proceedings" pursuant to Crim.R. 33(A)(1) or "the verdict is not sustained by sufficient evidence or is contrary to law," under section (A)(4) of the rule. We disagree.
 {¶ 14} The statute defining burglary, R.C. 2911.12(A)(1), prohibits a "person, by force, stealth or deception" from trespassing in an occupied structure when another person other than an accomplice of the offender is present, "with purpose to commit in the structure * * * any criminal offense."
 {¶ 15} Under the facts here, in order for the state to prove defendant committed burglary it had to show that he intended to forcefully trespass into Werner's apartment with the purpose to commit a felony, such as rape, gross sexual imposition, or kidnapping. Contrary to defendant's claim, the state was not required to show that defendant actually committed an underlying felony. State v. Mitchell, (Sept. 7, 1995), Cuyahoga App. No. 56575, Counsel Corrected Nunc Pro Tunc September 15, 1995; State v. Frazier (1979), 58 Ohio St.2d 253, 389 N.E.2d 1118.
 {¶ 16} In the case at bar, Shauger testified that on June 22, 2002, defendant first came to the apartment around 10:15 p.m. When the apartment buzzer rang, Shauger thought it was the friend she had been waiting for to pick her up. At the door, Shauger found defendant, instead of her friend. Holding a partially filled 40-ounce bottle of beer, defendant asked whether Werner was home. Waiting until Werner came to the door, defendant invited her to "hang-out and watch a movie." Werner declined and told defendant she just wanted to go to bed. When the friend arrived, Shauger, the friend, and defendant left the building together.
 {¶ 17} Werner testified defendant returned, however. She provided the following account of what followed. Minutes after Shauger and defendant left, the buzzer rang again. She went out to the front door of the building and saw defendant standing outside near a bush. He invited her to watch a movie, but Werner said no, returned to her apartment, and locked the door. Approximately five minutes later Werner heard knocking at her door. She looked through the door peephole but did not see anyone. Werner testified she opened the door and saw defendant standing off to the side near a small wall. Werner repeated that she did not want company. As she started to close the door, defendant pushed his way into the apartment.
 {¶ 18} Inside the apartment, he told her he was attracted to her and wanted to have a relationship. Defendant also questioned her about her sexuality and what she had against men. She told defendant she was not interested in him. When he went to the bathroom, she tried to call the cell phone of the person Shauger was with. Coming out of the bathroom, defendant told her to hang up the phone.
 {¶ 19} Defendant then sat on the couch where Werner was seated. He grabbed her and pulled her over to him, at which point he began kissing her. Werner then described defendant's other acts of force, including digitally penetrating her vagina, pulling her to the floor, and simulating sex while on top of her.
 {¶ 20} The victim's testimony establishes that defendant forced his way into Werner's apartment. Moreover, by delaying his return until after she was alone, defendant demonstrated an intent to take advantage of her vulnerability. These events further show he entered the apartment with purpose. The events that follow clarify what that purpose was.
 {¶ 21} Once inside her apartment, he promptly began discussing his attraction to her. When she said she was not interested in him, he began to assault her sexually. On this record, the evidence supports the conclusion that defendant, by force, stealth or deception, committed a trespass into Werner's apartment with purpose to commit unwanted sexual acts upon her. Contrary to defendant's claim, it is irrelevant "[w]hether an intended felony was committed * * *." State v. Frazier (1979),58 Ohio St.2d 253, 256; State v. Conway, (Jan. 18, 2001), Cuyahoga App. No. 77436.
 {¶ 22} Defendant's conviction, therefore, is not against the manifest weight of the evidence. For the same reasons, the court's denial of defendant's motion for new trial was not an abuse of discretion. Accordingly, defendant's first and second assignments of error are overruled.
{¶ 23} The prosecution violated appellant's constitutional rightsunder Article I, Section 10 of the Ohio Constitution, the Fifth Amendmentto the United States Constitution and the due process clause of theFourteenth Amendment to the United States Constitution when it engaged inimproper questioning and closing argument that commenced upon thedefendant's failure to make a statement to the police.
 {¶ 24} Defendant argues the state committed reversible error when it elicited testimony from Detective Ciryk that, prior to being arrested, defendant failed to keep several appointments to meet and discuss Werner's allegations. Defendant challenges this testimony as a comment on his pre-arrest silence. Defendant says, further, the state committed the same error when during its closing argument it made the same type of references to his pre-arrest silence. Defendant, however, did not object to Ciryk's testimony, nor did he object during the state's closing.
 {¶ 25} It is well established that the failure to object to an error in a criminal proceeding precludes the issue from being raised unless it rises to the level of plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13, 444 N.E.2d 1332. "An error does not rise to the level of plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Wickline (1990),50 Ohio St.3d 114, 120, 552 N.E.2d 913. Furthermore, "the plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v. Cooperrider (1983), 4 Ohio St.3d 226, 227,448 N.E.2d 452.
 {¶ 26} The Sixth Circuit has been very clear that:
{¶ 27} * * * the government's use of a defendant's prearrest silencein its case in chief is not a legitimate governmental practice. Unlikethe use of silence for impeachment purposes, the use of silence assubstantive evidence of guilt does not enhance the reliability of thecriminal process. Just as "every post-arrest silence is insolublyambiguous," Doyle, 426 U.S. at 617, there are many reasons why adefendant may remain silent before arrest, such as a knowledge of hisMiranda rights or a fear that his story may no be believed. The probativevalue of such silence is therefore minimal. Furthermore, the use ofprearrest silence may even subvert the truth finding process; because itpressures the defendant to explain himself or to suffer a court-sanctionedinference of guilt, the likelihood of perjury is increased. In sum,permitting the use of a defendant's prearrest silence as substantiveevidence of guilt would greatly undermine the policies behind theprivilege against self-incrimination while adding virtually nothing to thereliability of the criminal process.
 {¶ 28} Combs v. Coyle, (6th Cir., 2000), 205 F.3d 269, 283.
 {¶ 29} Recently, the Ohio Supreme Court has ruled that "use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." State v.Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at ¶ 38.
 {¶ 30} In Leach, the defendant was charged with attempted rape, gross sexual imposition, and kidnapping. Defendant had initially agreed to speak with police about the charges, but he never kept the appointment. Instead, defendant called police and told them he wanted to speak with an attorney before talking to them. During opening statements, the prosecutor referenced the fact that defendant had not kept his appointment and instead had stated that he wanted to speak with an attorney. During the trial, Sargeant Corbett, testified about his numerous calls to defendant, that defendant had not kept his appointment to speak with police, and that he wanted an attorney. Defendant was convicted on all charges.
 {¶ 31} On appeal, the Leach court held that the prosecutor's comments and Corbett's testimony were improper references on defendant's pre-arrest silence in violation of his Fifth Amendment privilege against self-incrimination. Affirming the appellate court, the Ohio Supreme Court observed that the state's case against defendant "contained no physical evidence and rested solely on the credibility of the state's witnesses." Id., at 141. Noting that the defendant did not take the stand and that the evidence against him was not overwhelming, the Court held that "the admission of defendant's pre-arrest, pre-Miranda silence was clearly prejudicial." Id., at 143.
 {¶ 32} In the case at bar, Ciryk testified that he made several attempts to interview defendant about Werner's allegations against him. Every time he made an appointment, however, defendant did not keep it. Tr. 301-305. In its closing argument, the state made the following comments:
{¶ 33} And according to this detective he agreed to come in on June28. But come June 28th he's nowhere to be found. He doesn't appear. Allright. How about July 10th? How about July 11th? How about July 17th? Howabout July 19th?
 {¶ 34} I come to you and say that this woman is accusing you of rapeand you didn't do the rape, wouldn't you think you would want to expressyourself? Is that so unusual if you didn't do anything wrong? Would younot be banging on the police officer's door ten minutes after you getthat call and say let's clear this up?
 {¶ 35} Tr. 345.
 {¶ 36} Defendant argues that in these comments the prosecution's rhetorical questions imply that defendant's pre-arrest silence is substantive evidence of his guilt on the burglary charge. We disagree. As in Leach, the state's case against defendant here contained no physical evidence and rested solely on the credibility of the state's witnesses. However, unlike the defendant in Leach, who was convicted on all charges, defendant here was acquitted on the rape charge — the only charge the prosecutor referred to in connection with defendant's pre-arrest silence.
 {¶ 37} We conclude that the state's comments about his pre-arrest silence concerning the rape charge did not affect the jury's consideration, because the jury acquitted him of that charge and two others, that is, three of the four charges against him. Because the jury distinguished between rape and burglary in its finding of guilty, we find the state's comments neither prejudiced defendant nor affected the outcome of the trial. We, therefore, find no violation of defendant'sFifth Amendment privilege against self-incrimination. Accordingly, defendant's third assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., Concurs.
 Dyke, J., Concurs in judgment only.
[1] Before trial began, the state dismissed Counts five and six.