JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Jose Contreras, appeals his conviction after a jury trial in the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Contreras was charged with one count of possession of drugs, a felony of the second degree; two counts of trafficking in drugs, both felonies of the second degree; and possession of criminal tools, a felony of the fifth degree. After two hung juries, a third jury convicted Contreras of all four counts.
 {¶ 3} Detective Scott Moran from the Cleveland Police Department received a call from Stanley Marrero, who had been arrested for possession and trafficking in heroin. Marrero wanted to work for the police in order to receive a lesser sentence for his drug charges. Marrero offered information regarding his supplier, Contreras. Marrero provided information regarding Contreras's appearance, his two known addresses, his vehicle, his two nicknames and the manner in which he distributed his illegal narcotics.
 {¶ 4} Detective Moran and his colleagues conducted surveillance of Contreras and his movements, verifying each of Marrero's statements regarding his supplier. However, no illegal activity was observed that day.
 {¶ 5} One day later, Marrero was released from jail and again called Detective Moran. Detective Moran arranged for Marrero to make a "controlled buy" of heroin from Contreras. Marrero called Contreras while in Detective Moran's presence and *Page 4 
ordered ten grams of heroin for one thousand dollars. Although Marrero spoke Spanish to Contreras, Detective Moran testified that he believed Marrero repeated their conversation truthfully. Contreras explained to Marrero that he would be receiving the heroin shortly, and then would sell it to Marrero. Contreras chose the home of his girlfriend's parents on Daisy Avenue in Cleveland as the place for the exchange.
 {¶ 6} Surveillance was kept at both of Contreras's residences. Within two hours, Detective Hutchinson observed Contreras come outside the Daisy Avenue residence and enter a blue Mazda for a brief period of time, and then exit the vehicle and go back into the residence. Contreras confirmed by phone that he had the heroin and would sell it to Marrero for the agreed price. In the meantime, Detective Hutchinson and several police units followed the Mazda. Detective Norman observed a drug transaction between the driver of the Mazda and another car.
 {¶ 7} Detective Moran ordered Marrero to put off the drug deal until the next day because of the lack of available units and money. Marrero called Contreras and put off the exchange.
 {¶ 8} After following the Mazda for approximately ten minutes, Detective Hutchinson returned to the Daisy Avenue residence and watched Contreras and his girlfriend, Priscilla Vidal, exit the house and drive away in Contreras's Ford Thunderbird. Detective Dvorak then ordered the stop and arrest of Contreras because the offer to sell heroin is a felony. *Page 5 
 {¶ 9} Contreras's car was stopped and surrounded by undercover vehicles. Contreras and his girlfriend were ordered out of the car and placed in handcuffs. The detectives searched Contreras's car for the heroin that he had offered to sell to Marrero. A "plug" or "finger" of heroin was found in the hood of the car in a "stash spot" previously described by Marrero. The heroin weighed in at 10.22 grams.
 {¶ 10} Thereafter, the detectives conducted consent searches at both known addresses. At the house on Daisy Avenue, the detectives did not find anything. At the Fulton Road apartment, detectives found $710 and passports for Contreras and his girlfriend.
 {¶ 11} Marrero testified that he knew Contreras as "Billy" or "Monster," and that he has known Contreras for approximately two years. Marrero testified that Contreras supplied him with "fingers" of heroin approximately fourteen or fifteen times over the past two years. Marrero testified that he contacted Detective Moran in an effort to reduce his own sentence on a pending case by working with the police. Marrero testified that he called Contreras and ordered ten grams of heroin from him.
 {¶ 12} During cross-examination, defense counsel inadvertently elicited testimony from Detective Dvorak with regard to Contreras ordering more drugs from his supplier while the detectives searched his place. On re-direct, the state questioned the detective about the order. *Page 6 
 {¶ 13} Contreras's girlfriend, Priscilla Vidal, testified on his behalf. Vidal testified that she had one child with Contreras and was currently pregnant with a second child. She testified that the Mazda was a car that she and Contreras wanted to purchase, but Contreras talked to the owner and decided it was too much money.
 {¶ 14} Vidal testified that after the stop, she gave consent to search, and described the search of the Daisy Avenue and Fulton Road addresses.
 {¶ 15} Videl also testified to the subsequent purchase of heroin. She testified that the detectives offered to let both of them go if they were able to turn someone else over to the police. Vidal claimed that she made Contreras call "Eldon," her friend's boyfriend, who was a known drug dealer, to order heroin. She testified that Contreras made the call to save them.
 {¶ 16} Detectives Moran and Mendoza were called as rebuttal witnesses by the state. Both detectives explained the subsequent "controlled" purchase of heroin. The detectives testified that the purchase was made by Contreras to avoid the arrest of Vidal. The detectives testified that Contreras knew the suppliers, the telephone number, the code words to use, and their method of transporting the heroin in hidden compartments called "clavos." Contreras ordered 20 grams of heroin, which was delivered by the supplier. The heroin was found in the special hiding spot, requiring specific maneuvering to open it, that Contreras described in detail. *Page 7 
 {¶ 17} Contreras was found guilty of all four counts and sentenced to a total of two years in prison. Contreras appeals, advancing two assignments of error for our review.
 {¶ 18} "I. Appellant was denied due process of law and a fair trial, due to the ineffective assistance of court appointed counsel."
 {¶ 19} Contreras argues that his trial counsel[1] was ineffective when he opened the door to testimony that was precluded by order of court after a motion in limine. Specifically, the motion in limine requested that the state be precluded from eliciting information about Contreras's purchase of heroin, which occurred after his arrest. The court granted Contreras's motion as to all state's witnesses. During cross-examination of Detective Dvorak, defense counsel inadvertently elicited testimony with regard to Contreras ordering more drugs from his supplier after the detectives searched his place. On re-direct, the state questioned the detective about the order. Defense counsel did not object.
 {¶ 20} Contreras also complains that his trial counsel did further damage when counsel elicited testimony from Contreras's girlfriend regarding the subsequent drug transaction. *Page 8 
 {¶ 21} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 22} In evaluating whether a defendant has been denied his right to effective assistance of counsel, the ultimate query is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, paragraph four of the syllabus. Moreover, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel performed deficiently and that he suffered prejudice from the deficiency. State v. Turner, 105 Ohio St.3d 331, 338,2005-Ohio-1938. "Deficient performance consists of falling below an objective standard of reasonable representation; to prove prejudice, a defendant must demonstrate that, but for counsel's errors, the result of the proceeding would have been different." Id., citing Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 23} Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent and the defendant has the burden of proof to *Page 9 
establish counsel's performance was deficient. State v. Calhoun,86 Ohio St.3d 279, 1999-Ohio-102. Further, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690.
 {¶ 24} As stated above, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel performed deficiently and that he suffered prejudice from that deficiency. Nevertheless, we need not address both components of the inquiry if the defendant makes an insufficient showing on one.Bradley, 42 Ohio St.3d at 143, citing Strickland, 466 U.S. at 697.
 {¶ 25} Here, we cannot say that the result of the trial would have been different had the testimony about the second drug transaction not been admitted. The testimony from Marrero and the detectives was compelling. All of Marrero's statements were corroborated by the detectives. The phone calls between Marrero and Contreras setting up the buy and how the "controlled buy" played out lent further credence to Marrero's information regarding his supplier, Contreras. Even if we disregard the subsequent purchase of heroin made by Contreras, we cannot say that he would have been found not guilty of the first transaction.
 {¶ 26} Next, Contreras argues that counsel should have filed a motion to suppress, challenging the warrantless search and seizure of Contreras's vehicle, *Page 10 
specifically searching under the hood of the vehicle. He contends that the detectives did not have specific and articulable facts to justify the search.
 {¶ 27} To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question. State v. Adams,103 Ohio St.3d 508, 2004-Ohio-5845.
 {¶ 28} Here, the original defense counsel filed a motion to suppress challenging the search, which was properly denied by the trial court because a police officer may lawfully stop a vehicle if he has a reasonable articulable suspicion that the motorist has engaged in criminal activity, including a minor traffic violation. The stop is constitutionally valid regardless of the officer's underlying motivation. State v. Chapel (Mar. 8, 2000), Guernsey App. No. 99-CA-18. Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement. State v. Moore (2000), 90 Ohio St.3d 47, 51. When police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents that may logically conceal the object of the search.State v. Fox, Washington App. No. 03 CA 63, 2004-Ohio-6972, citingOhio v. Welch (1985), 18 Ohio St.3d 88, syllabus.
 {¶ 29} In this case, Contreras was stopped and arrested for a felony. Since Contreras had offered to sell heroin to Marrero, the detectives had probable cause to *Page 11 
believe that the vehicle contained contraband. In addition, detectives were aware of Contreras's secret hiding place for transporting his drugs. Because the detectives had probable cause to believe that the heroin would be concealed in the vehicle, it was lawful for the detectives to search every part of the vehicle that may have concealed the heroin. The search was valid; therefore, the motion to suppress was denied. Consequently, Contreras's attorneys were not ineffective.
 {¶ 30} Contreras also asserts that defense counsel was ineffective because he failed to object to inappropriate comments and questions by the prosecutor regarding Contreras's right to remain silent. Specifically, Contreras points to the prosecutor's opening statement, wherein he stated, "Once they [the detectives] had completed their search of the home, they discussed the case with the defendant. The defendant spoke to them, and you'll hear what he said later." Also, Contreras complains about the direct examination of Detective Dvorak when he was asked if Contreras had any response to being informed that he was being arrested. Detective Dvorak answered: "He just looked. He didn't have any response as I recall." Finally, Contreras contends that the prosecutor improperly commented on Contreras's silence during closing argument when he said, "Well, he never mentioned any intent to purchase this blue Mazda."
 {¶ 31} In Doyle v. Ohio (1976), 426 U.S. 610, 618, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. *Page 12 
"Doyle rests on `the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'"Wainwright v. Greenfield (1986), 474 U.S. 284, 291, quoting South Dakotav. Neville (1983), 459 U.S. 553, 565. "Such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt." State v. Thompson (1987), 33 Ohio St.3d 1, 4.
 {¶ 32} We find that the only comment by the prosecutor that may rise to the level of a Doyle violation is his comment during closing argument wherein he implied that if Contreras really planned to buy the Mazda, he would have told the officers at the time of his arrest instead of waiting until trial.
 {¶ 33} If a court finds a Doyle violation, the court must then determine if the error is harmless under the test set forth underChapman v. California (1967), 386 U.S. 18. State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156. The standard set forth under Chapman requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in order for a constitutional error to be ignored as nonprejudicial. Id., quotingChapman, 386 U.S. at 24.
 {¶ 34} Further, in State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus, the Supreme Court of Ohio held that constitutional errors are harmless beyond a reasonable doubt "if the evidence, standing alone, constitutes *Page 13 
overwhelming proof of the defendant's guilt." In determining whether the prosecutor's conduct and admission of the post-arrest silence evidence was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt. State v.Gooden, Cuyahoga App. No. 82621, 2004-Ohio-2699; citing State v.Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333.
 {¶ 35} Although there was no objection by the defense, failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v. Fears, 86 Ohio St.3d 329,1999-Ohio-111; State v. Hicks, Cuyahoga App. No. 83931, 2004-Ohio-5223. Further, the state did not belabor the point or argue an inference of guilt from Contreras's post-arrest silence. Finally, we find that the evidence, standing alone, constitutes overwhelming proof of Contreras's guilt.
 {¶ 36} Lastly, Contreras contends that counsel was ineffective when she failed to request an interpreter for Contreras.
 {¶ 37} In a criminal case the defendant is entitled to hear the proceedings in a language he can understand. State v. Razo (2004), 157 Ohio App.3d 578, 58, citing State v. Pina (1975), 49 Ohio App.2d 394. Nevertheless, the trial court has the discretion to determine whether the defendant requires an interpreter for assistance. Id. Accordingly, an appellate court will not disturb a decision of the trial court regarding the necessity of an interpreter absent an abuse of discretion. Id. *Page 14 
 {¶ 38} Before the third trial, the court asked defense counsel whether Contreras needed an interpreter. The attorney indicated that it was not necessary because Contreras understood English and had only a slight problem when people talked too fast. The defense attorney informed the court that she had instructed Contreras to let her know if he did not understand something, since she speaks Spanish.
 {¶ 39} We find that the defense attorney was not ineffective when she did not request an interpreter for Contreras. Further, we cannot say that the result of the trial would have been different if Contreras had an interpreter.
 {¶ 40} Accordingly, Contreras's first assignment of error is overruled.
 {¶ 41} "II. The trial court erred and abused its discretion by permitting the state to comment on Mr. Contreras's right to remain in silence over objection of the defense counsel."
 {¶ 42} Under this assignment of error, Contreras again complains about the prosecutor's comments regarding Contreras's right to remain silent. As we stated previously, we find the comments to be harmless. Accordingly, Contreras's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 15 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MARY EILEEN KILBANE, J., CONCUR.
[1] Contreras had two defense attorneys representing him at the third trial, one male and one female. *Page 1