[Cite as *State v. Moore*, 2020-Ohio-3395.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                                          Court of Appeals No. E-18-065

    Appellee                                                          Trial Court No. 2017 CR 0127

v.

Nickolas S. Moore                                          **DECISION AND JUDGMENT**

    Appellant                                                          Decided:  June 19, 2020

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Nickolas Moore, appeals the November 1, 2018 judgment of the Erie County Court of Common Pleas, convicting him of rape and gross sexual imposition.  For the following reasons, we affirm the trial court judgment.

# I. Background

{¶ 2} According to the evidence presented at trial, Nickolas Moore was living with his girlfriend, A.W., and her then nine-year-old daughter, K.B. On March 29, 2017, Moore and A.W. had consensual sex in their bed while K.B. watched Jurassic Park in her bedroom. Afterwards, A.W. asked Moore to put K.B. to bed. Moore agreed to do so, and A.W. fell asleep.

{¶ 3} A.W. awoke and found that Moore was not in bed. She went to K.B.'s room, and from the hallway, she saw Moore lying on his side, thrusting toward K.B.'s back. Not sure of what she had just witnessed, A.W. got into bed between Moore and K.B. but said nothing.

{¶ 4} Around 10:30 p.m., Moore left for his 11:00 p.m. shift at work. A.W. woke K.B. at approximately 5:00 a.m. the next morning, and asked her what had happened the night before. K.B. told A.W. that Moore pulled down both his and her underwear and inserted his penis into her anus. Concerned because Moore would soon be home from work, A.W. left the apartment with K.B. and began driving. From the car, A.W. called her brother, who suggested that she take K.B. to the hospital. She stopped at a friend's house, who reassured her that everything would be okay. She then took K.B. to Firelands Hospital's emergency department.

{¶ 5} The nurses at Firelands told A.W. that they did not have the supplies to perform a rape kit there, but they contacted the Milan Police Department. A.W. arranged to meet Chief Robert Meister at the police station. She stopped at her father's house first

2.

because she realized that K.B.'s clothes would be taken as part of the rape examination. Her father did not have any of K.B.'s clothes at his home, so they stopped at Meijer to get a change of clothes for both A.W. and her daughter; her father accompanied them. A.W. chose to purchase clothes to avoid having to return to the apartment, where she knew Moore would be.

{¶ 6} Once at the police station, K.B. was placed in Chief Meister's office, and A.W. and Chief Meister went to A.W.'s apartment. A.W.'s father and Rebecca Deikman, of Erie County Children's Services, stayed at the station with K.B. At the apartment, A.W. and Chief Meister encountered Moore, and he asked what was going on. The chief spoke with him and A.W. collected K.B.'s bedding. Chief Meister and A.W. then left and sat in the car in a parking lot near the apartment complex, waiting to see what Moore would do. Moore left the apartment and got into his car. Chief Meister and A.W. returned to the police station.

{¶ 7} A.W., her father, K.B., and Deikman drove from the police station to Nord Center, where a rape kit could be performed. K.B. was examined by a SANE nurse. Vaginal, anal, and oral swabs were taken and K.B.'s underwear was collected. The examination revealed that K.B.'s anus was red and "gaping." No other injuries or abnormalities were observed.

{¶ 8} After the SANE exam, K.B. was interviewed by Deikman. K.B. told Deikman of other incidents over the last few months when Moore had touched her

3.

genitals and made her touch his, licked her breasts, and inserted his penis into her anus. K.B. provided detailed descriptions of Moore ejaculating during these encounters.

{¶ 9} Moore was arrested and he provided a DNA sample. The rape kit was evaluated by Alex Thiel, a forensic scientist in the forensic biology section of the Ohio Bureau of Criminal Investigation ("BCI"). No semen was identified in the vaginal, anal, or oral samples. There was a spot on the back panel of K.B.'s underwear, however, that tested positive for the presence of semen. Thiel forwarded the sample to BCI's DNA section for testing.

{¶ 10} Michael Monfredi, a forensic scientist in BCI's DNA section, tested the semen sample taken from K.B.'s underwear. A mix of DNA was detected: Moore's DNA, with a statistical inclusion of one in three trillion; K.B.'s DNA; and DNA from an unknown contributor. This unknown contributor was later determined to be A.W. (who had had sex with Moore just before he went into K.B.'s bedroom), with a statistical inclusion of one in 100 billion.

{¶ 11} The jury convicted Moore of two counts of gross sexual imposition, a violation of R.C. 2907.05(A)(1) and (C)(1) (Counts 3 and 7); two counts of gross sexual imposition, violations of R.C. 2907.05(A)(4) and (C)(2) (Counts 2 and 8); one count of rape, a violation of R.C. 2907.02(A)(2) and (B) (Count 5); and one count of rape, a violation of R.C. 2907.02(A)(1)(b) and (B) (Count 6). It acquitted Moore of four additional counts of rape charged in Counts 1, 2, 9, and 10 of the indictment.

4.

{¶ 12} Following Moore's conviction, the trial court merged Counts 3 and 4, 5 and 6, and 7 and 8 for purposes of sentencing. It imposed a sentence of four years' imprisonment on Count 4; 15 years to life on Count 6; and four years on Count 8, with Counts 4 and 8 to be served consecutively and Count 6 to be served consecutively to Counts 4 and 8, for a total sentence of 15 years to life and an additional eight years.

{¶ 13} Moore appealed and assigns the following errors for our review:

ASSIGNMENT OF ERROR NO. I

A TRIAL COURT ERRS, ABUSES ITS DISCRETION AND PREJUDICES THE APPELLANT WHEN IT ALLOWS THE STATE TO MAKE STATEMENTS IN ITS OPENING REGARDING APPELLANT NOT MAKING A STATEMENT TO THE POLICE[.]

ASSIGNMENT OF ERROR NO. II

ERROR OCCURS WHEN APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS, EQUALL [sic] PROTECTION AND CONFRONTATION WHEN THE STATE DOES NOT PROVE ALL THE ELEMENTS OF THE CRIME—I.E. THE CHILD VICTIM DOES NOT IDENTIFY APPELLANT AT TRIAL[.]

ASSIGNMENT OF ERROR NO. III

A TRIAL COURT ERRS AND ABUSES ITS DISCRETION AND PREJUDICES THE DEFENDANTS WHEN IT ALLOWS EXPERT WITNESSES FOR THE STATE TO TESTIFY WITHOUT THE STATE

PROVIDING AN EXPERT REPORT PURSUANT TO CRIM.R. 16(K)

AND/OR THE EXPERT TESTIMONY WAS NOT TO A REASONABLE

DEGREE OF SCIENTIFIC CERTAINTY[.]

ASSIGNMENT OF ERROR NO. IV

APPELLANT RECEIVED CONSTITUTIONALLY

INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL

COUNSEL FAILED TO MAKE OBJECTIONS TO THE ADMISSION

OF HIS JAIL BOOKING PHOTO, THUS DEPRIVING HIM OF DUE

PROCESS AND HIS RIGHT TO A FAIR TRIAL[.]

## II. Law and Analysis

{¶ 14} Moore claims in his first assignment of error that the trial court abused its discretion in allowing the state's attorney to comment on the fact that he declined a request by Chief Meister to meet with him at the station. He claims in his second assignment of error that the state failed to prove every element of the offenses because K.B. was unable to identify him in court. In his third assignment of error, Moore argues that the trial court abused its discretion by allowing the BCI witnesses to offer opinions about the origin of semen stains found on K.B.'s underwear when those opinions were not provided in their reports and were not stated to a reasonable degree of scientific certainty. And in his fourth assignment of error, Moore argues that trial counsel was ineffective in failing to object to the admission into evidence of Moore's booking photo.

{¶ 15} We address each of Moore's assignments in turn.

6.

## A. The Prosecutor's Remarks During Opening Statement

{¶ 16} In his first assignment of error, Moore argues that his constitutional rights were violated when, during its opening statement, the state "made comments about Appellant not making a statement to the police." He claims that the state's comments suggested to the jury that this demonstrated his guilt.

{¶ 17} During her opening statement, the state's attorney told the jury that police came to A.W.'s home the morning that she reported her daughter's rape, and while they were there, encountered Moore. The state's attorney told the jury that "Chief Meister asked if [Moore] had—would like to come down to the police department," but "[Moore] refused, as is his right to do."

{¶ 18} Defense counsel objected. He argued that Moore had "a right to counsel and the fact that he didn't want to be interviewed by a police officer * * * is wildly inadmissible." He insisted that this was "major error." The state's attorney offered to have the comment stricken. Instead, the court addressed the jury and told them that it was Moore's right not to give a statement and to disregard any remark about Moore's decision not to give a statement to the police. It instructed the jury that "nothing can be inferred from the fact that defendant chose not to give a statement to the police at that time." Moore moved for a mistrial, which the court denied.

{¶ 19} The Ohio Supreme Court has recognized that "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807

7.

N.E.2d 335. We, therefore, agree with Moore that the state improperly commented on his refusal to accompany Chief Meister to the police station. *See State v. Shea*, 1st Dist. Hamilton No. B-840720, 1985 WL 8938, *3 (July 17, 1985) ("Where * * * the state interjects the defendant's prearrest silence into the case in its opening statement, it does so in error."). But "violations of a defendant's constitutional right against self-incrimination are subject to a harmless error review." *State v. Castle*, 2017-Ohio-942, 86 N.E.3d 813, ¶ 22 (7th Dist.). Error is harmless under Crim.R. 52(A) if it does not affect substantial rights. "In most cases, in order to be viewed as 'affecting substantial rights,' the error must have been *prejudicial*." (Internal citations and quotations omitted.) *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36.

{¶ 20} An error will be deemed "prejudicial" if there is a reasonable probability that it affected the outcome of the judicial proceedings. *State v. Taylor*, 2017-Ohio-4395, 93 N.E.3d 1, ¶ 15 (4th Dist.). In the context of examining whether prejudice has resulted from the state's comment about the defendant's assertion of his right to silence, courts consider factors such as "the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt." *State v. Contreras*, 8th Dist. Cuyahoga No. 89728, 2008-Ohio-1413, ¶ 34.

{¶ 21} In *State v. Ramey*, 5th Dist. Delaware No. 12 CAC 03 0034, 2013-Ohio-665, the Fifth District considered whether similar remarks constituted prejudicial error. There, the state told the jury during opening statement that "[t]hey attempted to talk to

[the defendant] again, she declined any further interviews with them and so—." *Id.* at

¶ 12. Defense counsel objected and the trial court offered a limiting instruction. While

the appellate court found the prosecutor's remark to be improper, it found no prejudicial

error because the evidence against the defendant was strong, "the trial court immediately

ordered the jury to disregard the statement, and the issue was not revisited." *Id.* at ¶ 21.

*See also State v. Smith*, 9th Dist. Lorain No. 99CA007451, 2001 WL 39604, *2-3

(Jan. 17, 2001) (finding no prejudice where prosecutor's improper comment about

defendant's silence "was discrete in nature, led to an immediately sustained objection,

was retracted by an apology by the prosecutor, and was not repeated.").[1]

{¶ 22} Here, while the state should not have commented on Moore's refusal to go

to the station, the remark was isolated and was followed by an acknowledgment by the

state that Moore had the right to refuse to go to the station at that point. The trial court

immediately issued a curative instruction, admonishing the jury to disregard the

statement. "A jury is presumed to follow instructions of the court and to obey curative

instructions." *State v. McAlphine*, 8th Dist. Cuyahoga No. 79216, 2002 WL 120529, *7

(Jan. 24, 2002), citing *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1984).

Moreover, the comment was never revisited and the evidence against Moore was strong

and included testimony from the victim and her mother, medical records and testimony

---

[1] In *State v. Collier*, 8th Dist. Cuyahoga No. 82961, 2004-Ohio-3471, ¶ 37, in
determining whether the state's comments about pre-arrest silence prejudiced the
defendant, the court found it significant that the jury acquitted the defendant of several
charges. Here, too, the jury acquitted Moore of four of the charges in the indictment.

9.

from the SANE nurse who observed injury consistent with the victim's account, and corroborating DNA evidence. We, therefore, find that Moore was not prejudiced by the state's comment.

{¶ 23} Because we find that Moore was not prejudiced by the state's isolated remark during opening statement concerning his pre-arrest silence, we find Moore's first assignment of error not well-taken.

### B. The Child's Failure to Identify the Defendant

{¶ 24} Moore's second assignment of error challenges the sufficiency of the evidence. That is, Moore claims that the state failed to prove every element of the offenses because K.B. was unable to identify him in court.

{¶ 25} K.B. testified that it was her mother's boyfriend, Nickolas Moore, who perpetrated the offenses against her. She lived with Moore for a year and even called him "dad." But when asked at trial if she saw him in the courtroom, she said that she did not. In his second assignment of error, Moore argues that his identity as the perpetrator of the offense is an element of the offense and because the victim was unable to identify him in court, the state failed to prove this element beyond a reasonable doubt. He insists that his convictions violate his constitutional rights to due process and equal protection.

{¶ 26} The state responds that the defendant's identity as the perpetrator of a crime may be proven by circumstantial evidence and need not be proven solely through a victim's testimony. It maintains that K.B. knew Moore and described him as having black hair and a beard, but Moore changed his appearance before trial by shaving his

beard, cutting his hair differently, and wearing eyeglasses. It insists that even though K.B. did not make an in-courtroom identification, A.W. did. The state argues that Moore's identity as the perpetrator of the offenses was sufficiently proven beyond a reasonable doubt.

{¶ 27} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 28} Ohio courts recognize that the identity of the perpetrator of an offense may be established by either direct or circumstantial evidence. *State v. Littlejohn*, 8th Dist. Cuyahoga No. 101549, 2015-Ohio-875, ¶ 37; *State v. Golden*, 8th Dist. Cuyahoga No. 88651, 2007-Ohio-3536, ¶ 16 ("Courts have repeatedly recognized that identification can be proved by circumstantial evidence."); *State v. Golston*, 9th Dist. Summit No. 22154, 2005-Ohio-8, ¶ 17 (explaining that defendant's identity as perpetrator of offense may be proven by direct or circumstantial evidence). "Circumstantial evidence and direct

11.

evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶ 29} A number of Ohio cases have addressed the specific issue here—the victim's inability to identify a perpetrator in court. In *State v. Rowe*, 11th Dist. Lake No. 2017-L-170, 2018-Ohio-5066, for instance, the nine-year-old victim testified via closed circuit television. She identified her rapist by name and correctly described his physical appearance and his relationship as her sister's father, but when asked if she could see him in the courtroom, she responded that she did not see him. The defendant argued that because the victim was unable to physically identify him during the trial, the state's evidence was insufficient to identify him as the individual who twice raped her. The appellate court disagreed. It noted that the victim was having trouble seeing through the TV monitor, and it concluded that "her inability to physically identify him at trial [went] to the weight of the evidence." *Id.* at ¶ 36.

{¶ 30} In *State v. Nelson*, 2d Dist. Greene No. 2014-CA-7, 2015-Ohio-113, the victim was unable to identify the defendant as the man who burglarized her home and raped her. She testified, however, that the man who raped her drank from a daisy cup that he left behind at her apartment. The defendant's DNA was found on the cup. In response to the defendant's Crim.R. 29 motion, the trial court found that this evidence was sufficient to establish the defendant's identity as the perpetrator of the crimes.

{¶ 31} And in *State v. Jones*, 8th Dist. Cuyahoga No. 44395, 1982 WL 5937, *1 (Sept. 30, 1982), the 86-year-old victim was asked at trial if he saw the man who robbed

12.

him in the courtroom, and he said, "no." A few minutes later he identified the appellant as the robber, and explained that he did not immediately recognize him because he had on nicer clothes and his hair was shorter. The appellate court explained that "[a]s to the identification of the appellant, it was within the province of the jury to determine the credibility to be given the various witnesses, including the victim * * * himself." It concluded that the victim's testimony was sufficient evidence to sustain the jury's finding that the appellant committed the offense.

{¶ 32} Here, there is no question that K.B. knew Moore—he was her mother's boyfriend, the three lived together, and K.B. called Moore "dad." Moore's sperm was found on K.B.'s underwear. *See, e.g., State v. Bandy*, 7th Dist. Mahoning No. 05-MA-49, 2007-Ohio-859, ¶ 85 ("Despite the fact that Stephanie was unable to identify appellant, the DNA evidence alone overwhelmingly supported the conclusion that appellant was Stephanie's attacker."). And A.W. and Chief Meister both identified Moore in court and described how his appearance changed between the time of his arrest and the time of trial. That K.B. was unable to identify Moore in court does not render the state's identity evidence insufficient.

{¶ 33} We find Moore's second assignment of error not well-taken.

### C. The Experts' Reports and Testimony

{¶ 34} In his third assignment of error, Moore argues that Thiel, one of the state's BCI witnesses, testified to opinions that exceeded the scope of the report that the state provided to the defense, in violation of Crim.R. 16(K). He further argues that opinions

rendered by Thiel and by Monfredi, the state's other BCI witness, were not stated to a reasonable degree of scientific certainty and, therefore, should have been excluded.

{¶ 35} During opening statement, the state's attorney told the jury that A.W. and Moore's DNA was found in K.B.'s underwear. In response, defense counsel suggested during his opening statement that the DNA could have transferred onto K.B.'s underwear when she sat on the bed in her mother's room—the bed on which Moore and A.W. had sex approximately 10 hours earlier. The state's attorney questioned Thiel and Monfredi about this theory.

{¶ 36} Thiel testified that the stain found in the victim's underwear was larger on the inside than it was on the outside. Thiel said that this signified to her that the semen soaked from the interior of the underwear to the exterior, and not from the exterior of the underwear to the interior. Moore insists that the state did not disclose that it intended to elicit opinions on this subject matter, therefore, the court erred by allowing this testimony.

{¶ 37} Crim.R. 16(K) provides:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown,

14.

which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial. "The purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." (Internal citations and quotations omitted.) *State v. Walls*, 2018-Ohio-329, 104 N.E.3d 280, ¶ 27 (6th Dist.).

Here, the state timely disclosed Thiel's expert report. That report did not contain Thiel's opinions about the pattern of the semen stains, and the state's attorney explained why: she learned of Moore's theory for the first time during opening statement. In other words, the state did not intend to elicit these opinions and did so only in response to the theory raised by the defense during opening statement. Under these circumstances, we find no Crim.R. 16(K) violation and no error by the trial court in allowing the state to question Thiel about whether the semen leaked from the inside to the outside of the underwear.[2]

{¶ 38} Moore also argues that Thiel testified only that she "*believed* the stain was from the interior portion that had just soaked through to the exterior." (Emphasis added.) He contends that Thiel's opinions were not rendered to a reasonable degree of scientific

---

[2] We note that photos of the interior and exterior of K.B.'s underwear were produced to the defense and the areas where semen was found were circled. The trial court noted that the stains are "clearly larger on the inside than on the outside."

15.

certainty. He makes a similar argument with respect to the opinions offered by Monfredi. The state asked Monfredi whether he would expect the transfer of DNA onto K.B.'s underwear if sperm was deposited onto A.W.'s mattress ten hours earlier and K.B. sat in it. Monfredi testified that that scenario was "unlikely." Again, Moore complains that this opinion was not rendered to a reasonable degree of scientific certainty.

{¶ 39} The Ohio Supreme Court explained in *State v. D'Ambrosio*, 67 Ohio St.3d 185, 191, 616 N.E.2d 909 (1993) and *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 81, that in criminal cases, experts may testify in terms of possibilities—as opposed to probabilities. "In the criminal context, questions about certainty go not to admissibility but to sufficiency of the evidence; they are matters of weight for the jury." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 129. Accordingly, Thiel and Monfredi's opinions were admissible even if they were not stated to a reasonable degree of medical certainty.

{¶ 40} Accordingly, we find Moore's third assignment of error not well-taken.

### D. The Admission of the Booking Photo

{¶ 41} In his fourth assignment of error, Moore argues that trial counsel rendered ineffective assistance because he failed to object to the admission into evidence of Moore's booking photo. This photo was used to demonstrate what Moore looked like at the time he was charged—Moore had shaved his beard and changed his haircut between the time he was arrested and the time of trial. Moore argues that the admission of this

16.

photo constituted prejudicial and reversible error because it provided the trier of fact with the reasonable inference that Moore had been involved in prior criminal conduct.

{¶ 42} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 43} Ohio courts hold that where testimony or photos are admitted into evidence that indicate that defendant was involved in *prior criminal involvement*, "such admission constitutes prejudicial and reversible error." *State v. Hamilton*, 6th Dist. Lucas No. L-98-1017, 1999 WL 299896, *4 (May 14, 1999), citing *State v. Breedlove*, 26 Ohio St.2d 178, 184, 71 N.E.2d 238 (1971), paragraph two of the syllabus. Here, the booking photo at issue was the photo taken when Moore was arrested for the present crimes—it was not taken in connection with past criminal activity. There was no implication that

Moore had been involved in prior criminal activity, therefore, no prejudice stemmed from the admission of the photo. *Breedlove* at 182 (distinguishing between use at trial of mug shot taken after defendant's arrest for crime being tried versus use of mug shot from prior criminal involvement). Moore's counsel was not ineffective for failing to object to the admission into evidence of the booking photo.

{¶ 44} Accordingly, we find Moore's fourth assignment of error not well-taken.

### III. Conclusion

{¶ 45} Moore was not prejudiced by the state's isolated remark during opening statement indicating that he declined Chief Meister's request to go to the Milan police station. We find Moore's first assignment of error not well-taken.

{¶ 46} The state did not fail to prove Moore's identity as K.B.'s rapist where K.B. knew Moore and identified him by name, Moore's semen was found on her underwear, and Moore was identified by A.W. and Chief Meister, who described how Moore's appearance had changed since the time the offenses were committed. K.B.'s failure to identify Moore in court did not render the state's evidence insufficient. We find Moore's second assignment of error not well-taken.

{¶ 47} The state did not violate Crim.R. 16(K) by eliciting opinions not contained in its expert's report where the opinions were offered to counter the defense's theory of the source of semen stains found on the victim's underwear. This theory was not made known to the state until defense counsel's opening statement. Additionally, the state's

experts' opinions were admissible even if they were stated as possibilities and not probabilities. We find Moore's third assignment of error not well-taken.

{¶ 48} Finally, Moore's counsel was not ineffective for failing to object to the admission into evidence of Moore's booking photo. The photo was taken in connection with Moore's arrest for the crime being tried and not in connection with prior criminal activity. We find Moore's fourth assignment of error not well-taken.

{¶ 49} We affirm the November 1, 2018 judgment of the Erie County Court of Common Pleas. Moore is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                                                   _____
                                                                      JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, P.J.                                                 _____
CONCUR.                                                                      JUDGE

                                                                     _____
                                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.