[Cite as *State v. Washington*, 2017-Ohio-2595.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

STATE OF OHIO,                          :          **O P I N I O N**

        Plaintiff-Appellee,          :

        - vs -                               :          **CASE NO.  2016-L-052**

DAMON D. WASHINGTON,          :

        Defendant-Appellant.        :

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000001.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Aaron T. Baker,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1}    Defendant-appellant, Damon D. Washington, appeals his conviction for Rape, following a jury trial in the Lake County Court of Common Pleas.  The issue to be determined by this court is whether the force element of Rape is supported by the evidence when the victim is the defendant's biological daughter and testifies that she was afraid of her father and performed sexual conduct to avoid punishment.  For the following reasons, we affirm the judgment of the lower court.

{¶2} On January 5, 2015, Washington was indicted by the Lake County Grand Jury for two counts of Gross Sexual Imposition, felonies of the third and fourth degree, in violation of R.C. 2907.05(A)(2) and (4); fifteen counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b) and (2); and seven counts of Sexual Battery, felonies of the third degree, in violation of R.C. 2907.03(A)(5).

{¶3} A trial was held on March 16-18 and 21, 2016. The following pertinent testimony was presented:

{¶4} M.P., who was born on January 26, 1998, and was 18 years old at the time of trial, testified regarding the charges giving rise to the present matter. Washington is her biological father. She began living with him at the age of six, when she was removed from her mother, Jamie Pierce's, custody. M.P. testified that, while living with her father, he would give her "whoopings," where she was spanked with a belt or iron cord. She described one instance where he hit her all over her body while she was naked. M.P. indicated that she was afraid of her dad because "he wasn't a really nice guy."

{¶5} In 2009, when M.P. was 11 and in the fifth grade, Washington told her that the whoopings could be avoided through what he called a "deal." This deal would require her to touch his penis. M.P. described several incidents of "deals" throughout the subsequent several years, which escalated into a requirement for her to perform oral sex. M.P. did not like doing this, it made her sad, made her cry, and she did it with "reluctance." She testified that she was afraid and did not want to perform this activity on her dad. "Deals" would allow her to avoid punishment for bad grades or to be

2

permitted to go to a friend's house or to softball practice. Washington told her not to tell anyone about the conduct.

{¶6} On December 20, 2014, M.P.'s mom, Jamie, visited her at softball practice. Jamie indicated that she had begun visiting with M.P. again after some extended absences due to her criminal activity and jail sentences. On that date, M.P. told her about the abuse. At that time, no action was taken to report the abuse to police, as Jamie did not know what to do.

{¶7} M.P. testified regarding additional "deals" that occurred on December 22 and 23, 2014. On December 23, after M.P. performed oral sex, she spit the ejaculate into a container and brushed her teeth. Testimony was presented that M.P. had taken a forensic science class in school and was trying to preserve the evidence. She left the home to visit her mother that day, bringing with her the container, the toothbrush, and a towel she used to clean up after oral sex. On that date, Jamie took M.P. to the police. Jamie testified that M.P. was afraid of her father and he had been "physical with her."

{¶8} On December 23, 2014, M.P. described various instances of sexual abuse, including the "deals for oral sex" to a forensic nurse examiner, Diane Darber. She also provided detailed descriptions of such instances to Painesville Police Lieutenant Toby Burgett. Burgett noted that the items produced by M.P. were submitted for testing.

{¶9} Dr. Karen Zavarella, a forensic analyst with the Lake County Crime Laboratory, testified that she determined, to a reasonable degree of scientific certainty, that Washington's sperm was located in the container, on the towel, on M.P.'s t-shirt, and on her toothbrush.

{¶10} Washington testified and denied the allegations. He indicated that M.P. had never performed any sex act upon him, either forcefully or otherwise. He did not know how his semen was in the container M.P. provided.

{¶11} At the conclusion of the trial, the jury found Washington not guilty of 22 of the 24 counts in the Indictment. The jury found him guilty of Count 23, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2), and Count 24, Gross Sexual Imposition, a felony of the third degree, in violation of R.C. 2907.03(A)(5). These two offenses related to Washington's conduct on December 23, 2014. The trial court memorialized the verdict in a March 30, 2016 Judgment Entry.

{¶12} Following a sentencing hearing, the trial court issued a May 2, 2016 Judgment Entry of Sentence. The court found that Gross Sexual Imposition merged with Rape. Washington was ordered to serve a prison term of nine years for the sole count of Rape. The court also found him to be a Tier III Sex Offender.

{¶13} Washington timely appeals and raises the following assignments of error:

{¶14} "[1.] The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A) on the charge of Rape, and thereafter entering a judgment of conviction of that offense which was not supported by sufficient evidence, in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

{¶15} "[2.] The trial court erred by entering a judgment of conviction of Rape that was against the manifest weight of the evidence, in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution."

4

{¶16} As Washington did in his brief, we will consider the two assignments of error, which relate to the manifest weight of the evidence and the sufficiency of the evidence, jointly.

{¶17} Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In essence, sufficiency is a test of adequacy." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶18} In contrast, manifest weight of the evidence "addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State*

5

*v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

**{¶19}** Washington takes issue only with the Rape conviction, specifically arguing that there was a lack of evidence to prove that force was used to compel M.P. to perform sexual conduct.

**{¶20}** R.C. 2907.02(A)(2) provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (Citation omitted.) *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988).

**{¶21}** In the present matter, the acts underlying the Rape conviction occurred between Washington and his biological daughter, M.P. Courts have recognized "the coercion inherent in parental authority when a father sexually abuses his child." *Id.* at 58; *State v. Hartman*, 11th Dist. Lake No. 88-L-13-129, 1989 WL 146426, 5 (Dec. 1, 1989). "Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats

6

and displays of force are not necessary to effect the abuser's purpose." (Citation omitted.) *Eskridge* at 59.

{¶22} In the present matter, while M.P. did not testify that Washington used physical force on her to compel the oral sex on December 23, there was abundant testimony that established the coercion, threat, and fear that led to the sexual conduct. This was demonstrated through M.P.'s testimony discussing the events that occurred over a period of several years. She testified that she had been "whooped" by her father all over her body, and that, when she was 11, her father told her she could avoid this type of punishment by doing "deals," or sexual conduct. M.P. testified that she followed her father's directions, was scared to say no, was afraid of him, and was instructed not to tell anyone. At the time M.P. reported this to her mother, she was afraid the abuse would escalate. She was also afraid to disclose the abuse because she thought she would be whooped or unable to see her mother.

{¶23} M.P. lived with her father when the Rape occurred and he had cared for her for most of her childhood. Given the conduct she described, as well as her personal feelings and fears, this is sufficient to establish "force" for the purpose of rape. *See State v. Benchea*, 11th Dist. Trumbull No. 2015-T-0054, 2016-Ohio-1369, ¶ 47 (the victim's "fear coupled with [the defendant's] position of authority as her father figure was sufficient to establish the forcible element of rape"); *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985) (where the case involved a "child being told to do something by an important figure of authority, and commanded not to tell anyone," it was reasonable to conclude that the "child's will was overcome" and force was established).

{¶24} Washington argues that as a 16-year-old, 250-pound girl, who testified to only two whoopings since the age of 11, it would be more difficult to force M.P. to comply than a child of "tender years," who is not equal in "age, size, and strength" to her parent. *See Eskridge* 38 Ohio St.3d at 58, 526 N.E.2d 304. Again, as noted above, M.P.'s physical ability to resist is not the only fact to consider, given the relationship between the parties, the testimony of fear and coercion, and the legal authority for the proposition that force can be "subtle and psychological." *State v. Sweitzer*, 11th Dist. Trumbull No. 98-T-0203, 2000 WL 973416, 6 (July 14, 2000). While Washington questions the credibility of M.P.'s testimony regarding fear, since, inter alia, at some points she refused to comply with directions to perform oral sex and faced no consequences, we decline to second guess the jury's determination as to credibility. The jury is in the best position to make such an assessment. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It was well within its province to weigh the conflicting testimony presented in favor of M.P.

{¶25} Washington also questions the credibility of the contention that M.P. was forced to perform oral sex on him on December 23, 2014, given that M.P. had disclosed alleged sexual assaults just a few days prior, on December 20, 2014. This does not contradict the other evidence supporting a finding that he committed the rape. Washington seems to contend that M.P. could not continue to suffer sexual abuse merely because she had reported it to her mother. However, M.P. remained in her father's home for a few days after she reported the incident and would have experienced the same fear and coercion during those three days that she had described feeling for several years. Whether M.P.'s mother acted appropriately in failing to report

8

this matter to police immediately is not relevant to whether the December 23 rape occurred. Based on the testimony and evidence presented at trial, we find that there was sufficient evidence as to the force element of Rape and that the conviction was supported by the weight of the evidence.

{¶26} The first and second assignments of error are without merit.

{¶27} For the foregoing reasons, Washington's conviction for Rape in the Lake County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.