[Cite as *State v. Rowe*, 2018-Ohio-5066.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-170** |
| BRIAN A. ROWE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 001053.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brandon J. Henderson*, *Justin M. Weatherly*, and *Kenneth Staiduhar*, Henderson, Mokhtari & Weatherly Co., LPA, 3238 Lorain Avenue, Cleveland, OH 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Brian Rowe, appeals his convictions for two counts of rape and one count of gross sexual imposition. We affirm.

{¶2} Rowe's assignments of error are addressed collectively:

{¶3} "[1.] The evidence presented at trial [is] insufficient as a matter of law to support a finding beyond a reasonable doubt that the appellant was guilty of rape and gross sexual imposition.

{¶4} "[2.] Appellant's convictions for rape and gross sexual imposition [are] against the manifest weight of the evidence."

{¶5} Whether evidence is legally sufficient is a question of law that we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997), citing *State v. Robinson,* 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148 (1955). An appellate court reviewing the sufficiency of the evidence examines the evidence and determines whether, upon viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991); *Thompkins,* supra, 390.

{¶6} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. * * * *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the

exceptional case in which the evidence weighs heavily against the conviction.')" (Citations omitted.) *Thompkins*, supra, at 387.

{¶7}    If the trial court's judgment results from a jury trial, it can only be reversed on manifest weight grounds by a unanimous concurrence of all three judges on the appellate panel reviewing the case. *Id.* at 389.  The fact that the evidence is susceptible to more than one interpretation does not render a conviction against the manifest weight of the evidence.  *State v. Ramey*, 2d Dist. Clark No. 2014-CA-127, 2015-OhiO-5389, 55 N.E.3d 542, ¶50, *appeal not allowed*, 145 Ohio St.3d 1458, 2016-Ohio-2807.  "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* at ¶51.

{¶8}    And a finding that a conviction is supported by the weight of the evidence "'necessarily rests on the existence of sufficient evidence.'" *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶44, quoting *State v. McCrory,* 11th Dist. Portage No. 2006-P-0017, 2006-Ohio-6348, at ¶40.

{¶9}    Following jury trial, Rowe was convicted of one count of gross sexual imposition in violation of 2907.05(A)(4), which states:

{¶10}    "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶11}    "* * *

3

**{¶12}** "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

**{¶13}** "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶14}** Rowe was also convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(b), which states:

**{¶15}** "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

**{¶16}** "* * *

**{¶17}** "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶18}** Sexual conduct includes fellatio. R.C. 2907.01(A).

**{¶19}** Rowe dated a woman named Jennifer and eventually moved in with her. Jennifer had four children. She had two daughters, A.P. and I.L., and a son, C.P., from prior relationships. Rowe is the father of Jennifer's third and youngest daughter, W.R. Jennifer, her children, and Rowe lived together with Jennifer's mother, Elizabeth, in her single-family home in Willowick, Ohio.

**{¶20}** Rowe moved in with Jennifer sometime in 2012 and permanently moved out in approximately March of 2015. The sexual abuse claims against him were disclosed in February of 2016, almost a year after Rowe left.

4

{¶21} Rowe contends the evidence presented at trial is insufficient to establish that he committed the three offenses and alternatively that his convictions are against the manifest weight of the evidence. He argues that Jennifer's other boyfriend Chris was the abuser, but that because she did not report the abuse, and not wanting to get in trouble, directed the girls to identify Rowe. Rowe also claims the girls identified him as their assailant at the direction of their mother to prevent him from gaining custody of W.R. There was no evidence that Jennifer told her daughters' to lie. Instead, Rowe's defense relied on the unchallenged testimony that Jennifer was an alcoholic, an abusive mother, and usually got her way.

{¶22} The gross sexual imposition offense involves Jennifer's oldest daughter, A.P. and the rape offenses involve Jennifer's middle daughter, I.L. We address each conviction and the arguments relative to each separately and then collectively consider Rowe's omnibus argument, which points to Jennifer's other boyfriend as the girls' abuser.

{¶23} As for Rowe's gross sexual imposition conviction, A.P. testified that she was 15 at the time of trial in October of 2017. She was born in September of 2002. A.P. identified Rowe as her sister's father and identified him in the courtroom as the man who sexually abused her.

{¶24} On one occasion in 2014 when A.P. was eleven or twelve years old, A.P.'s mother sent her to the garage to get something and Rowe was there. A.P. was locked out of the house. Rowe had placed several outdoor furniture cushions and a blanket together to form a bed in the garage. He grabbed A.P. and pulled off her leggings and underwear. He had his pants around his ankles and then forced A.P. on her stomach on the makeshift bed before he began rubbing his privates against her vagina. A.P. resisted,

got away, and immediately put her clothes back on.  She left the garage and walked around the block.  When she returned, Rowe was gone, and A.P. ended up sleeping on the sidewalk outside of the garage.

**{¶25}**  This testimony alone provides sufficient evidence to support that Rowe had sexual contact with A.P., i.e., rubbing his privates on her vagina, for his sexual gratification while A.P. was under the age of 13 during the time alleged.

**{¶26}**  A.P. also described Rowe waking her up in the middle of the night numerous times during which he rubbed and groped her privates.  She recalls this activity beginning a few months after Rowe moved into their home, occurring once or twice a week, and continuing until Rowe moved out.  A.P. did not tell anyone about the abuse because she was afraid of her mother's reaction.  Her mother was mentally, physically, and verbally abusive to her children, and had previously accused A.P. of flirting with and stealing her boyfriends.

**{¶27}**  Rowe directs our attention to A.P.'s testimony that he abused her multiple times during 2014 to 2015 as demonstrating that he could not have committed the gross sexual imposition offense because Rowe permanently moved out of the home in March of 2015 and was frequently absent for weeks or months at a time during 2014.  The parties stipulated that Rowe was not present at the home from June 22, 2014 through September 20, 2014, and from August 22, 2015 to the date of trial, October 30, 2017.

**{¶28}**  The indictment as amended alleges the gross sexual imposition occurred between July 1, 2014 and August 1, 2015, a period of 13 months.  While Rowe was absent from the house for many months during the charged timeframe, it is abundantly clear that

he was also living in the home for many of those months. He cannot, therefore, persuasively argue that he could not have been the culprit.

**{¶29}** Furthermore, the precise date of an offense is not an essential element of a crime. *State v. Barnecut*, 44 Ohio App.3d 149, 542 N.E.2d 353 (1988); *State v. Mundy,* 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994). Instead, the state must offer proof of the offense occurring "reasonably within the time frame alleged." *State v. Barnhart,* 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶50, quoting *State v. Bogan,* 8th Dist. Cuyahoga No. 84468, 2005-Ohio-3412, ¶10. Here, the state met its burden in this regard upon presenting A.P.'s testimony about the incident in the garage in 2014.

**{¶30}** Additionally, it is common for young victims not to remember the precise date of an offense especially when the offense involves a repeated course of conduct over time. *Mundy, supra.* This inability to recall a certain date goes to a witness' credibility for the jury to assess. *State v. Fitzpatrick,* 11th Dist. Portage No. 2009-P-0016, 2009-Ohio-3942, ¶19. Accordingly, we disagree that the jury lost its way and created a manifest miscarriage of justice. Rowe's manifest weight of the evidence argument regarding his gross sexual imposition offense lacks merit.

**{¶31}** As for Rowe's two rape convictions, I.L. testified via closed circuit television that she was nine years old at the time of trial. And as Rowe contends, I.L. was unable to identify him as an individual seated in the courtroom while she was looking through the television monitor during trial. When asked if she could see him in the courtroom through the television monitor, I.L. said, "It's hard to see. No. I don't see him. I don't really see him." However, I.L. testified that she knew that Brian Rowe was the person that forced

7

his penis in her mouth when she was only five or six. She identifies him by first and last name. I.L. also correctly describes Rowe as her baby sister's father.

{¶32} I.L. described one time when Rowe had a blanket over her head while she was sitting on the floor of her mother's bedroom that she shared with Rowe. Her mother was asleep when Rowe pulled his pants down and made I.L. perform oral sex on him. She recalled being nervous at the time and described him using his hands to tilt her head. I.L. remembers him saying, "Don't tell anybody that I did this." He then carried I.L. back to her bed.

{¶33} On another occasion, I.L. recalls Rowe waking her up when she was in her bed. She describes him kneeling on her bed and making her perform oral sex. She said this happened more than once in her bedroom and once in her mother's room. I.L. was either five or six years old at the time of the offenses. She also testified about one time that she went camping with her family and Rowe. She recalls a playground and playing horseshoes.

{¶34} I.L.'s testimony is sufficient to establish that Rowe twice raped her by making her engage in sexual conduct, i.e., performing oral sex on him, while she was less than 13 years old.

{¶35} Rowe directs our attention to I.L.'s testimony that her abuser lived with them at the time she disclosed her abuse to her family and her statement that Rowe fled the home to avoid confrontation as showing he could not be her abuser because he did not reside with the family at the time. Rowe also claims that I.L.'s testimony that the man who abused her went camping with the family was evidence that someone other than Rowe was her abuser. However, the inconsistency in I.L.'s testimony goes to the weight

8

of her testimony, which the jury considered in assessing her credibility. Moreover, both I.L. and A.P. testified about a camping trip involving Rowe.

**{¶36}** Rowe also points to I.L.'s inability to physically identify him during the trial as showing the state's evidence is insufficient to identify him as the individual who twice raped her. We disagree. Again, I.L. correctly referred to him by name and identified him as her baby sister's father. Further, she described having difficulty seeing through the monitor while attempting to identify Rowe in the courtroom. Thus, the jury was aware of her inability to identify him that day, but nevertheless believed her testimony and identification, and her inability to physically identify him at trial goes to the weight of the evidence.

**{¶37}** A jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Thomas,* 11th Dist. Lake No. 2004-L-176, 2005-Ohio-6570, ¶29. It is the jury's function to assess and weigh witness credibility, decide what it believes, and render a verdict consistent with its assessment of the evidence. *Id.*

**{¶38}** As stated, Rowe's predominant defense at trial and his omnibus argument on appeal is that he was not the girls' abuser, but that it was their mother's other boyfriend Chris who committed the crimes and that she instructed the girls to lie. Rowe points out that there was evidence of a prior investigation in 2011 into alleged sexual abuse by Jennifer's boyfriend Chris. However, while there was testimony that a prior investigation occurred regarding Chris, the case was closed without charges being filed. Further, the evidence at trial about this prior investigation was cryptic. There was no evidence detailing what precipitated the 2011 investigation into Chris and no evidence that the girls

9

made sexual abuse allegations against him. Thus, the abuse claims are unsubstantiated, and this was before the jury for it to consider.

**{¶39}** Moreover, Rowe never called Jennifer to testify to ask her if she instructed the girls to lie about who did this to them. He likewise did not ask either of the girls on cross-examination if their mother told them to lie about the identity of their abuser. This is not an exceptional case in which the evidence weighs heavily against the conviction, and we cannot find that the jury lost its way.

**{¶40}** Accordingly, Rowe's assignments of error lack merit and are overruled. The trial court's decision is affirmed.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

10