[Cite as *State v. Tiggett*, 2019-Ohio-1715.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2018-T-0036** |
| MARVIN LOUIS TIGGETT, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2017 CR 00614.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, *Diane Barber* and *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}   Defendant-appellant, Marvin Louis Tiggett, Jr., appeals his convictions, following a jury trial in the Trumbull County Court of Common Pleas, for Rape and Gross Sexual Imposition.  The issues to be determined by this court are whether a trial court abuses its discretion in denying a jury's request to review transcripts of a victim's testimony and whether convictions for Rape and Gross Sexual Imposition are against the weight of the evidence when the victim describes incidents that constitute said

offenses with some conflicting details and the defendant denies committing the offenses. For the following reasons, we affirm the decision of the court below.

{¶2} On September 13, 2017, Tiggett was indicted by the Trumbull County Grand Jury for the following: Rape (Count One), a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), relating to alleged conduct in the fall of 2011; Rape (Count Two), a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), arising from conduct allegedly committed in the summer of 2012; Gross Sexual Imposition (Count Three), a felony of the third degree, in violation of R.C. 2907.05(A)(4), also relating to the summer of 2012; and Gross Sexual Imposition (Count Four), a felony of the third degree, in violation of R.C. 2907.05(A)(4), relating to conduct alleged to have occurred in the spring of 2013.

{¶3} A jury trial was held from March 26 through 30, 2018. The following pertinent testimony and evidence were presented.

{¶4} J.V., who was 17 years old at the time of trial, testified that Tiggett was her stepfather, whom she had known since the age of three. She testified that he began molesting her around the age of six until she was approximately 12. She remembered it occurring "a handful of times" and had "tried to push all of the memories out of [her] head." She testified that it was difficult to recall every detail since she had been "trying to forget it for so long."

{¶5} J.V. described several instances of abuse. In the fall of 2011, while she was in sixth grade, she recalled an instance that occurred after returning home from her grandmother's house. After she went to bed, she awoke to Tiggett standing over her. He stated that she had been sleepwalking and had touched his private parts. He began to touch her both over and under her clothes. He touched her chest, arms, and thighs

2

and then moved to her private parts. She explained "it was never inserted like [during other incidents], never penetrated all the way through, just the fingertip."

{¶6} In the summer of 2012, when she was 12 years old, J.V. and Tiggett were sitting on the living room couch, watching a movie. J.V. recalled in detail that he covered the two with a pink blanket made by her grandmother and she was wearing a pink nightgown with a rhinestone heart. He touched her chest underneath her clothes and touched her vagina with his finger. A friend was present at the house on that date, whom J.V. variously testified may have been in either the bedroom or on the couch at the time this occurred.

{¶7} J.V. testified that the last incident occurred during the spring of 2013, which she recalled because she remembered seeing her school uniform with shorts on the doorknob, signifying it was springtime. J.V. woke up to Tiggett rubbing her chest. She asked him to stop and he did.

{¶8} According to J.V., she informed her cousin of the abuse in the summer of 2016 and her mother shortly thereafter and the matter was reported to children's services. She did not speak about the abuse until 2016 because she "was scared to say anything." She was also worried about her young niece who spent a lot of time in her family's home.

{¶9} After no charges were brought, in the summer of 2017, J.V. recorded a conversation she had with Tiggett. During that conversation, the recording of which was played at trial, the two discussed how they used to fight and have conflicts. J.V. subsequently told Tiggett that she had an ectopic pregnancy which she believed may be a result of his molestation of her. Tiggett apologized to J.V. several times. Although he did not specifically state that he had molested her, he did not deny her claims that he

3

did. He asked her to forgive him and stated that he was "disgusted with himself." At the end of the recording, Tiggett referenced that "we can seal this up," which J.V. believed meant she should not speak of it.

{¶10} During cross-examination, J.V. agreed that some of her statements made to children's services during two recorded interviews differed from her testimony. She agreed she told children's services that Tiggett never raped her but explained that was because she did not understand his conduct to be considered rape. As to the spring 2013 incident, she indicated that she had stated during a children's services interview that it happened in the fall but she later recalled it was in the spring because of her uniform shorts, which she could only wear in the spring. Testimony by her school's assistant principal later indicated that students could wear shorts in both the early fall as well as spring.

{¶11} J.V. also testified about an incident that occurred in Myrtle Beach, in which Tiggett had touched her vagina. She conceded she had told children's services that Tiggett had only touched her chest on that occasion but explained that she had flashbacks later in which she remembered his complete conduct.

{¶12} Detective Nicholas Carney of the Warren City Police Department received a referral from children's services in 2016 regarding the alleged abuse. Tiggett was initially interviewed in September 2016, but no charges were filed. The investigation was reopened August 24, 2017, when J.V.'s recording was submitted.

{¶13} Carney interviewed Tiggett on September 7, 2017, and he denied J.V.'s allegations. Pursuant to that interview, Tiggett stated that he had not been apologizing in J.V.'s recording for molesting her but for general issues, including expressing his regret about her health problems. He believed J.V. was lying because she did not want

4

him to be with her mother. Carney spoke again with Tiggett on September 8, during which Tiggett admitted to an incident which took place when J.V. was six years old, inappropriately touching her on top of her clothes. A recording of a phone conversation from the Trumbull County Jail between Tiggett and his father was played, in which Tiggett stated "I did what she said I did," a statement Carney testified he had also made on September 8.

{¶14} For the defense, Tiggett testified that on one occasion, when J.V. was seven or eight, he had touched her chest area over her t-shirt and her inner thigh. He explained that this was the incident he admitted to the detective, his father, and to J.V. on the recording. He testified that he never touched her elsewhere and that no incident occurred in Myrtle Beach or at any other time. He stated that he and J.V. had conflicts and he was strict when she would not do chores.

{¶15} On March 30, 2018, the jury found Tiggett guilty of Counts Two and Three, related to conduct committed in the summer of 2012, as well as the lesser included offense of Gross Sexual Imposition on Count One, which arose from conduct committed in the fall of 2011. Tiggett was acquitted on Count Four.

{¶16} On the same date, a sentencing hearing was held. Tiggett was sentenced to serve a term of ten years to life imprisonment on Count Two and terms of three years on the remaining two counts. The sentences were ordered to be served concurrently.

{¶17} Tiggett timely appeals and raises the following assignments of error:

{¶18} "[1.] The trial court erred and abused its discretion by denying the jury's request for a transcript of the victim's testimony.

{¶19} "[2.] The appellant's convictions are against the manifest weight of the evidence."

5

{¶20} In his first assignment of error, Tiggett argues that the trial court abused its discretion by failing to provide the jury with a transcript of the victim's testimony or have such testimony read to them when it was requested.

{¶21} The trial court's determination as to whether to grant a jury's request to be provided with a witness' testimony is evaluated under an abuse of discretion standard of review. *State v. Davis*, 62 Ohio St.3d 326, 340, 581 N.E.2d 1362 (1991), citing *State v. Berry*, 25 Ohio St.2d 255, 263, 267 N.E.2d 775 (1971). An abuse of discretion is a term "of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶ 30.

{¶22} The jury submitted a question stating: "Can we get typed transcripts of [J.V.'s] testimony?" The court answered in a written response: "No. They are not available." There is nothing in the record indicating whether this issue was discussed with trial counsel.

{¶23} Tiggett argues that the jury's request should have been granted since the victim's trial testimony was "convoluted and contradicted prior statements by the victim," which he asserts is reflected by the fact that he was not convicted of all counts.

{¶24} While the trial court could have permitted the foregoing to be done, Tiggett does not indicate how it was an abuse of discretion to choose not to do so. It has been held by this court that "a trial court has no duty to provide a jury with requested transcripts," and that it is proper for the judge to require the jury "to rely on its recollection of the evidence presented at trial." *State v. Williams*, 11th Dist. Ashtabula No. 2001-A-0044, 2002-Ohio-6919, ¶ 35; *State v. Brown*, 11th Dist. Trumbull Nos. 95-T-5349 and 98-T-0061, 2000 WL 522339, *4 (Mar. 31, 2000).

6

**{¶25}** Tiggett also does not demonstrate that rereading the testimony would have clarified any issues the jury had, merely speculating that the jurors could have benefited from it. *See State v. Carter*, 72 Ohio St.3d 545, 560, 651 N.E.2d 965 (1995) (speculation as to how the jury may have benefited from having transcripts does not warrant reversal). The fact that the jury only convicted Tiggett on some counts would seem to indicate that the jurors carefully considered the entirety of the evidence presented and were able to determine which charges were subject to reasonable doubt.

**{¶26}** In favor of his position, Tiggett cites *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, in which the appellate court upheld the lower court's decision to provide a transcript to the jurors upon request, finding it was not an abuse of discretion. *Id.* at ¶ 12. Again, since it is within the trial court's discretion whether to provide the jury with a transcript, it can exercise its discretion either to deny or allow the jury's request without committing reversible error. *Cox* does not require that a transcript must be provided but only stands for the proposition that it can be.

**{¶27}** The first assignment of error is without merit.

**{¶28}** In his second assignment of error, Tiggett contends that his convictions were not supported by the weight of the evidence, primarily because J.V. was unclear in her testimony and gave inconsistent statements to children's services and at trial.

**{¶29}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A challenge to the weight of the evidence compels a reviewing court to consider "the evidence's effect of inducing belief" and ask "whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382,

7

2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. Tiggett cites as part of his statement of the standard of review various guidelines set forth in *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985), which include whether evidence is contradicted, the reliability of the evidence, and the extent to which evidence is vague. This court has clarified that these are "guidelines to be taken into account by the reviewing court" but "do not create a specific standard of review to be applied to manifest weight claims." (Citation omitted.) *State v. Gau*, 11th Dist. Lake No. 2018-L-044, 2018-Ohio-5191, ¶ 30.

**{¶30}** Initially, we note that Tiggett argues generally that his "convictions" are against the weight of the evidence but then contends only that the jury "lost its way in convicting [him] of the second rape charge." We will address the weight of the evidence as to the three convictions.

**{¶31}** As to Count One, Tiggett himself emphasizes that he "admitted to one allegation of molestation" and that "[t]hat admission relates to Count I and the jury quite clearly believed Appellant's testimony in that regard, as they found Appellant not guilty of the rape charge contained in that count and guilty of the lesser included molestation charge." Count One relates to the conduct occurring in the fall of 2011 when J.V. stated he touched her vagina but did not penetrate it. Given the foregoing statements, it appears Tiggett concedes that a conviction as to this offense was proper. It is at times, however, unclear which offense Tiggett admitted to, as he admitted on multiple

8

occasions to an incident he alleged occurred when J.V. was six, seven, or eight, for which he was not charged. Regardless, J.V. provided testimony that described inappropriate touching which constitutes the offense of Gross Sexual Imposition for which he was convicted.

{¶32} Regarding Counts Two and Three, J.V. clearly testified regarding the incident during which Tiggett touched her chest under her clothes and placed his fingers on her vagina, and described the event during which this occurred in detail, including the events leading up to the abuse. There is no question that this testimony meets the elements of both the offenses of Rape and Gross Sexual Imposition, nor does Tiggett refute the sufficiency of the evidence.

{¶33} This testimony alone, when viewed as credible by the jurors, is enough to provide convictions supported by the manifest weight of the evidence. A conviction may be supported by the weight of the evidence even in the absence of corroborating witness testimony, based on the testimony of the victim. *See In re C.S.*, 10th Dist. Franklin No. 11AP-667, 2012-Ohio-2988, ¶ 30. However, there is also support for the convictions in the taped conversation between J.V. and Tiggett, where he does not deny accusations of molestation, and his confessions that he had, at some point which is at times unclear, done "what she said [he] did." While there may be questions regarding whether Tiggett was admitting to the offenses for which he was indicted, the jurors could weigh this in their overall consideration of the evidence. Tiggett also questions the weight of the evidence given that police did not believe they had enough evidence to pursue charges until after J.V.'s recording, the persuasiveness of which he disputed. Even presuming the recording had no weight, whether police believed they had enough

9

evidence to bring charges is not determinative of the issue of whether the verdict is supported by the weight of the evidence presented to the jury.

{¶34} It is accurate that the evidence in the present matter primarily involves a weighing of the credibility of J.V.'s and Tiggett's testimony, as there were no other witnesses to the offenses or physical evidence. However, "[i]t is the jury's function to assess and weigh witness credibility, decide what it believes, and render a verdict consistent with its assessment of the evidence." *State v. Rowe*, 11th Dist. Lake No. 2017-L-170, 2018-Ohio-5066, ¶ 37. Since the jury is in the best position to assess credibility, we generally decline to second guess its credibility determinations. *State v. Washington*, 11th Dist. Lake No. 2016-L-052, 2017-Ohio-2595, ¶ 24, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶35} Tiggett questions, however, the jury's determination of credibility in light of his contentions that J.V.'s testimony was inconsistent with her statements to children's services and that she was unclear as to details of the offenses. As to the alleged inconsistency, no specific instances are argued in Tiggett's brief. However, the inconsistencies pointed out by trial counsel primarily related to an incident in Myrtle Beach, for which Tiggett was not charged, and the spring 2013 incident, for which he was acquitted. It appears, then, to the extent that there were any inconsistencies, the jury took them into account. While there may have been other minor inconsistencies or issues with the testimony, it was again for the jury to determine J.V.'s credibility, especially given her detailed description of the events that occurred. *Rowe* at ¶ 37.

{¶36} As to Tiggett's contention that J.V.'s testimony was "unclear," we disagree. J.V. described specific details of several offenses, including what she was wearing and the blanket used to cover her. She described the exact manner in which she was

10

touched, explaining fondling of her chest and where Tiggett had placed his finger. The latter conduct has been found to constitute the offense of Rape. *State v. Barker*, 2016-Ohio-8006, 75 N.E.3d 738, ¶ 24 (6th Dist.). For the offense in which she described that Tiggett touched her vagina but stated that his finger "was never inserted" or "penetrated all the way," the jury found Tiggett not guilty on the count of Rape and guilty of the lesser included offense of Gross Sexual Imposition. Again, this shows that the jury understood her testimony, not that she was unclear or inconsistent.

{¶37} Given the foregoing, we do not find that the jury lost its way or created a manifest miscarriage of justice that would warrant reversal. Its verdicts were supported by the weight of the evidence.

{¶38} The second assignment of error is without merit.

{¶39} For the foregoing reasons, Tiggett's convictions for Rape and Gross Sexual Imposition in the Trumbull County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

11